```
1   LAW OFFICE OF BERNARD V. KLEINMAN, PLLC
2   By:     Bernard V. Kleinman, Esq.
3           2 Westchester Park Drive
4           Suite 418
5           White Plains, NY 10604
6           Tel. 914.644.6660
7           Fax 914.694.1647
8           Email: attrnylwyr@yahoo.com
9   Attorney for Plaintiff
```

==================================================  :

ERIK ALKE,                                          :

                        Plaintiff,                  :

                                                    :
        — versus —                                  :        9:16-CV-845  (DNH/ATB)
                                                    :        **COMPLAINT**
                                                    :   **AND JURY DEMAND**
NEW YORK STATE DEPARTMENT OF CORRECTIONS            :
AND COMMUNITY SUPERVISION, SUPERINTENDENT           :
STEVEN RACETTE, DR. RICHARD ADAMS, BRIAN            :
FISCHER, FNU TAYLOR, VONDA JOHNSON, JOHN DOES       :
1 through 20,                                       :
                                                    :
                        Defendants.                 :
==================================================  :

Plaintiff, ERIK ALKE ("ALKE"), residing at 87-02 79th Avenue, Glendale, NY 11385,

by way of Complaint against the Defendants says:

### INTRODUCTION

1.  On or about August 4th, 2013, at approximately 4:30 p.m., Plaintiff, while an inmate at

    Clinton Correctional Facility (hereinafter referred at as "CCF"), located in Dannemora,

    NY, was injured while under the care and supervision of JOHN DOES 7 through 15,

    employees and staff members of the NEW YORK STATE DEPARTMENT OF

    CORRECTIONS AND COMMUNITY SUPERVISION (hereinafter referred to as

1     "DOCCS").  As a direct and proximate result of said injuries the Plaintiff suffered

2     permanent damage to his spine and back, such that he is now permanently disabled,

3     unable to work, and suffers daily and constant pain and suffering.

4    2.   After repeated requests for medical attention, the Plaintiff was permitted to see the

5     medicals services office at CCF, and, specifically, was treated by Defendant Dr.

6     RICHARD ADAMS (hereinafter referred to as "Dr. ADAMS").

7    3.   Minimizing the nature of the Plaintiff's injuries, and failing to provide the necessary and

8     proper medical treatment, Dr. ADAMS, has directly caused the continued and aggravat-

9     ing nature of the Plaintiff's injuries, such that Plaintiff is now permanently disabled,

10     unable to work, and suffers daily and constant pain and suffering.

11    4.   Throughout the relevant period of Plaintiff's incarceration, Defendants repeatedly failed

12     to provide proper medical care and treatment; failed to provide proper continuity of care

13     and treatment; failed to follow internal policies and protocols; and were otherwise negli-

14     gent towards Plaintiff, including by acting or failing to act in ways that were detrimental

15     to his physical health and his well-being, which has led to his permanent physical

16     disability, and continual and constant painful existence.

17                                 **PARTIES**

18    5.   Plaintiff ERIK ALKE is an adult resident citizen of the State of New York, County of

19     Queens, residing at 87-02 79th Avenue, Glendale, NY 11385.

20    6.   Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND

21     COMMUNITY SUPERVISION is the New York State agency directly charged with the

22     housing, custody, and care of individuals convicted of felony offenses in the courts of

23     New York.  The DOCCS is responsible for the custody and care of inmates housed at

Clinton Correctional Facility.

7. At all relevant times herein, Defendant, DOCCS, was the employer, and responsible for, the actions of employees of the DOCCS, including, but not limited to, Defendant Dr. RICHARD ADAMS, and Defendant Superintendent STEVEN RACETTE, and all other named and un-named Defendants herein.

8. At all relevant times herein, Defendant DOCCS was the lawfully chartered and assigned agency designated with the responsibility for enforcing the laws and ordinances of the State of New York, and the Constitution of the State of New York, as they relate to inmates housed at CCF, along with the applicable laws of the United States and the Constitution of the United States.

9. At all relevant times herein, Defendant BRIAN FISCHER was the Commissioner of DOCCS and, as such, was responsible for operation and administration of all facilities within DOCCS, including CCF. He is sued in his individual and official capacity.

10. Upon information and belief, at all relevant times herein, Defendant Dr. ADAMS, was an employee of Defendant DOCCS, and was charged with providing medical treatment and care for the inmates housed at CCF. He is sued in his individual and official capacity.

11. Upon information and belief, Defendant Superintendent STEVEN RACETTE, was the Warden of CCF, and, as such, was directly responsible for the custody, care, well-being, and health of the inmates housed at CCF, including the Plaintiff herein. At all times material hereto, said Defendant was acting by virtue of his position as an employee of the DOCCS and under the color of state law. Said Defendant is sued in both his individual and official capacity as an employee of DOCCS.

12. Defendants JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5,

and JOHN DOE 6, among other unknown, later to be named parties, were responsible for, among other actions, the physical transfer of Plaintiff to Albany Medical Center and Alice Hyde Medical Center on multiple occasions, and the manner in which he was transported, including any restraints, seating, positioning, *etc.* Unless otherwise noted said Defendants are sued in both their official and individual capacities.

13. Defendants JOHN DOE 7 through JOHN DOE 15, among other unknown, later to be named parties, were responsible for, among other actions, failing to properly supervise and manage the Plaintiff at the time he was injured, by forcing him to engage in physical work that was clearly beyond his (or any one person's) physical ability, and by failing to assist in his recovery from the initial action that cause his injury. Unless otherwise noted said Defendants are sued in both their official and individual capacities.

14. Upon information and belief, at all times relevant herein, Defendant Dr. VONDA JOHNSON, served in the capacity of Facility Health Services Director at Clinton Correctional Facility Hospital, and served as the supervisor of Defendant Dr. RICHARD ADAMS. The Defendant is sued in both her individual and official capacity.

15. Upon information and belief, Defendants JOHN DOE 16 through JOHN DOE 20, are the employees of DOCCS who diagnosed and treated the Plaintiff. They are sued in both their individual capacity and official capacities.

16. Upon information and belief Defendant FNU TAYLOR, is a nurse who, at all times relevant herein, was serving in the medical treatment facility at CCF. She is being sued in her official and individual capacity.

17. Clinton Correctional Facility is a maximum correctional facility operated by and under the DOCCS, and located in Dannemora, NY.

## JURISDICTION AND VENUE

18. Each and all acts of Defendants Dr. ADAMS, Superintendent STEVEN RACETTE, Nurse FNU TAYLOR, Dr. VONDA JOHNSON, DOCCS Commissioner BRIAN FISCHER, and JOHN DOES 1 through 20, were performed under the color and pretense of the constitutions, statutes and ordinances, regulations, customs, and usages of the United States of America, the State of New York, the County of Clinton, and the Town of Dannemora, and under the authority of their office as employees and officers for Defendant DOCCS.

19. The incidents which give rise to this cause of action occurred within this jurisdiction and within three years of the filing of this Complaint.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), as amended by Section 311 of the Judicial Improvement Act of 1990, by reason of it being the location where all or substantially all of the events or omissions giving rise to the claim occurred.

21. Jurisdiction is proper pursuant to federal question jurisdiction and the amount of damages is in excess of the jurisdictional amount laid out therein and the Civil Rights Act, *viz.*, 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1343(a)(3)(4), 42 U.S.C. § 1983, 42 U.S.C. § 1985. Plaintiff further invokes the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

22. In addition thereto, this action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.

23. In addition, thereto, this action is brought pursuant to the Rehabilitation Act, 29 U.S.C. § 794.

24. In addition thereto, this action is brought pursuant to the Eighth and Fourteenth Amend-

ments to the federal Constitution, and art. I, § 5 of the Constitution of the State of New York.

## **FACTUAL ALLEGATIONS**

25. Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

26. On November 9th, 2009, ERIK ALKE was convicted, in Supreme Court, Queens County, Criminal Term, of the crime of Manslaughter in the Second Degree. At that time he received a sentence of incarceration of from three to nine years. He was then committed to the custody and care of the Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION ("DOCCS").

27. Prior to his incarceration, Mr. ALKE had been a Customs and Border Protection Agent with the United States Department of Homeland Security. He had held this position since October 31, 2005.

28. At no time prior to his arrest in the above indictment had he ever suffered from any debilitating or disabling injuries or conditions.

29. As a pre-requisite to his employment with the Department of Homeland Security he had been required to satisfy a grueling physical examination and to train as a federal law enforcement officer. At no time, in the period leading up to his arrest, was he ever unable to perform his duties either physically or mentally. In addition, thereto, at no time prior to his arrest did he ever fail any physical exam required by his positon as a Customs and Border Protection Agent.

30. Following his conviction, the Plaintiff was initially placed at Cayuga Correctional

Facility, located in Moravia, NY. In January 2010, he was transferred to Clinton

Correctional Facility in or around May 2010. He remained there until his parole on or

about November 1st, 2015.

31. At all relevant times herein Defendant STEVEN RACETTE was the Superintendent and

Warden of CCF.

32. On Sunday, August 4th, 2013, the Plaintiff was called in for inmate work at about 4:30

p.m. He, along with several other inmates, was informed that their duty that day was to

move some office furniture from the Watch Commander's Office to another location.

The items that these inmates were to move included a solid oak desk, approximately 10

feet long and 3½ feet high, and 2½ feet wide, and weighed in excess of 400 pounds. As

these inmates, without any other assistance, were moving the desk out of the office, they

had to move it over a saddle between the office and the hallway, in a stairwell, where it

got stuck. The Plaintiff, seeking to resolve the issue, got down to look at the situation.

While the desk was being held by the other inmates, a piece slid down, striking the

Plaintiff and he fell to the floor.

33. As he struck the concrete floor, the Plaintiff heard a crack in his lower back, around the

coccyx bone. For approximately five minutes Mr. ALKE was completely unable to move

as he was pinned under the desk.

34. At no time did Defendants JOHN DOE 7 through JOHN DOE 15, present at the time of

the incident, and witnessing the incident and the clear physical impact upon the Plaintiff,

make any effort to assist in the Plaintiff's recovery; instead relying upon the other two

inmates present at the time.

35. Finally able to free himself, without the assistance of JOHN DOE 7 through JOHN DOE

15, he was told by the Corrections Officer that he could go to the hospital. Without any assistance being offered by any of the Defendants, it took the Plaintiff more than 20 minutes to get to the hospital — a trip that, under normal circumstances, would only take three to five minutes.

36. At the hospital he was examined by Nurse FNU TAYLOR. After a less than two minute examination, he informed the Plaintiff that he had likely badly bruised his back and kidneys, and that he would likely urinate and defecate blood for several days — all of which actually happened. No other medical action was taken to either diagnose or treat the Plaintiff at that time.

37. FNU TAYLOR informed him that he would be called for sick call within three days.

38. Not hearing anything, by August 8th, 2013, and still in intense pain, and highly immobile, Plaintiff ALKE put in for sick call on August 8th, 2013.

39. The following day (August 9th, 2013) Plaintiff ALKE saw Nurse FNU Clemens. He informed and showed Nurse Clemens that he had injured his lower back, and showed to the Nurse a bulge where his spine was protruding out from his back as a result of the injury. After Nurse Clemens finished her examination, he was seen by Defendant Dr. RICHARD ADAMS.[1]

40. Defendant Dr. ADAMS, in a hurried, and clearly annoyed tone and manner, did a less than cursory examination of the Plaintiff. He informed the Plaintiff that all he had was a strained muscle, and that he was faking his pain, and that the Plaintiff was attempting to shirk his duties and work. Dr. ADAMS continued that there was nothing wrong with the

---

[1] Dr. Adams is not a Medical Doctor. His degree is from the Philadelphia College of Osteopathic Medicine, awarded in 1977.

1. Plaintiff, and that Plaintiff ALKE should "get out of my office." Incredibly, Dr.
2. ADAMS, furthermore, informed Plaintiff ALKE that going back to work would be good
3. for him and his condition.

41. When the Plaintiff still objected and said to Dr. ADAMS that he would need to get an attorney to protect him, Dr. ADAMS response was (apparently relying upon a belief that he would never be held accountable for his actions, including his failure to provide proper medical care to his patients): "Go ahead, I don't care."

42. On August 16th, 2013 the Plaintiff was taken to the CCF medical facility for x-rays of his lower back. After the x-rays were taken the radiologists asked about the pain that the Plain-tiff was suffering and the Plaintiff acknowledged that he was still suffering from intense pain. When the Physician's Assistant FNU Calley was shown the x-rays, her response was: "Oh my God, how can he even walk?" At this point in time it was discussed amongst the medical personnel as to whether this was a pre-existing condition — notwithstanding that none of the medical records ever indicated a back injury prior to this time, nor had the Plaintiff ever complained about such a back injury or pain before.

43. The medical personnel on the scene informed the Plaintiff that the indication was that he was suffering from compression fractures, and that a severe spinal injury was also quite possible. The decision was made to send the Plaintiff to Alice Hyde Medical Center ("Alice Hyde"), in Malone, NY for more extensive x-rays.

44. Upon the transfer of the Plaintiff to Alice Hyde, the Plaintiff was kept in a shackled position, the Defendants, JOHN DOE 1 and JOHN DOE 2, responsible for his physical transfer, took and made no efforts, notwithstanding the Plaintiff's repeated complaints to them, to take any action in the transfer that might alleviate or temporize his pain or

1    condition.

2    45. On August 21st, 2013 the Plaintiff saw Defendant Dr. ADAMS. Dr. ADAMS informed

3         the Plaintiff that there was nothing wrong with him. Dr. ADAMS also admitted that he

4         had not bothered to review the x-rays, and was relying entirely upon the reports from the

5         radiologist that he allegedly received. Dr. ADAMS refused to provide any treatment or

6         care to the Plaintiff.

7    46. Dr. ADAMS also told the Plaintiff that he should return to work and that the physical

8         labor would be good for his condition.

9    47. Two weeks later, on September 4th, 2013, the Plaintiff saw Dr. ADAMS again. Dr.

10        ADAMS informed the Plaintiff that he had received the hospital review from Alice Hyde

11        Medical Center, and that the Plaintiff only had a compression fracture to his T12

12        vertebrae. Dr. ADAMS told the Plaintiff that this was the only injury that had been

13        suffered as a result of the accident, and that any other injuries or pain were due to a pre-

14        existing condition or some undiagnosed degenerative disease.

15   48. As was referenced above — the medical records of the Plaintiff, prior to his being placed

16        in the custody and care of the Defendants, never had indicated either (a) a pre-existing

17        condition relative to this injury, or (b) some undiagnosed degenerative disease relative to

18        this injury.

19   49. At no prior point in time had the Plaintiff ever suffered any back injury. If the Plaintiff

20        had ever had a degenerative disease he would not have qualified for a position as

21        Customs and Border Protection Agent with the Department of Homeland Security.[2]

---

[2] See Exhibit D for a description of the "Medical Standards and Physical Requirements" for a
Customs and Border Protection Agent position.

While the Plaintiff had no more than three or four times called in sick from his law enforcement job, none of the illnesses were back related, or had anything to do with any degenerative malady. And, none of the medical records held by the DOCCS, and available to Dr. ADAMS ever indicated any sort of pre-existing injury or condition.

50. One month later, on October 4th, 2013, the Plaintiff was, once again, seen by Dr. ADAMS. By this time the Plaintiff was unable to sit, stand, or walk for any extended period of time, and his condition had severely deteriorated. At the Plaintiff's suggestion and request, and solely on the basis of the Plaintiff's self-advocacy, did Dr. ADAMS request that the Plaintiff be sent out for a MRI imaging of his lower back.

51. At this point in time Dr. ADAMS offered the Plaintiff a narcotic medication to alleviate the pain. The Plaintiff refused this offer on the basis that he had come to the conclusion that Dr. ADAMS was solely and only interested in treating the symptoms and the pain, and had neither the interest nor the capability, as a health care professional, to properly treat the actual injury.

52. Annexed hereto as Exhibit A is a medical report from CCF from February 4th, 2014. In the report it is written about Mr. ALKE: "HE DID NOT WANT NARCOTICS 2ND [*sic*] PAST ADDICTIONS." This is a complete falsehood and alteration of the actual records. The Plaintiff was never found to have abused narcotics nor taken illegal drugs. As a law enforcement officer he was periodically tested and never found to have any illicit substance in his system.[3]

---

[3] This action, by the medical personnel, constitutes a violation of Penal L. § 175.10, Falsifying business records in the first degree, and is a Class E felony, punishable by a term of incarceration of from 1 to 4 years. See Penal L. § 55.05(1).

53. Upon finding this in the CCF records, on February 12, 2014, the Plaintiff sent a letter to Defendant Dr. VONDA JOHNSON, Facility Health Services Director at CCF, where he specifically, and vehemently objected to this characterization as the Plaintiff never had any addiction issues whatsoever. See Exhibit B. The DOCCS has never responded to this complaint. Defendant JOHNSON never responded either.

54. One month later, on November 4th, 2013, the Plaintiff was sent to Albany Medical Center for an MRI of his back. During this twenty hour round-trip, notwithstanding his injuries and pain, he was shackled the entire time, and, due to his pain, was unable to either sit or stand for an extended period time of this trip.

55. Upon the transfer of the Plaintiff to Albany Medical Center, the Plaintiff was kept in a shackled position, the Defendants, JOHN DOE 3 and JOHN DOE 4, responsible for his physical transfer, took and made no efforts, notwithstanding the Plaintiff's repeated complaints to them, to take any action in the transfer that might alleviate or temporize his pain or condition.

56. At Albany Medical Center the MRI was not done for his lower back, but, rather, for his mid- or thoracic back area.

57. Once again, on December 3rd, 2013, Plaintiff ALKE was forced to undergo the long round-trip between CCF and Albany Medical Center.

58. The Medical Reports from the exams conducted at Albany Medical center, on November 5th and December 3rd, 2013, were consistent with one another. Both sets of MRI exams disclosed the following (see Exhibit G):

   a. Compression fracture at the T12 vertebral body;

b. Disc bulging at the L3-L4 lumbar vertebrae;

c. Broad disc bulging in the right paramedian area, revealing a "distinct annular fissure", and;

d. Slight loss of disc signal in the T2 thoracic vertebrae.

59. Upon the transfer of the Plaintiff to Albany Medical Center, the Plaintiff was kept in a shackled position, the Defendants, JOHN DOE 5 and JOHN DOE 6, responsible for his physical transfer, took and made no efforts, notwithstanding the Plaintiff's repeated complaints to them, to take any action in the transfer that might alleviate or temporize his pain or condition.

60. On December 20th, 2013, the Plaintiff saw Dr. ADAMS. The Plaintiff was informed by Dr. ADAMS that the only injury suffered as a result of the furniture mishap was damage to the T12 vertebrae, and that any other injuries (notwithstanding the complete absence of any supporting factual or medical proof) was pre-existing. (See ¶¶ 42, 47-49, *supra*.) The only treatment that Defendant Dr. ADAMS prescribed was physical therapy.

61. On January 3rd, 2014, the Plaintiff appeared for physical therapy. The physical therapist told the Plaintiff that the only damage that he would treat the Plaintiff for was an injury to his T12 vertebrae, and that any other injuries were pre-existing, *i.e.*, had occurred prior to the Plaintiff's incarceration and custody of Defendant DOCCS. See ¶¶ 42, 47-49, *supra*.

62. While the first page of the medical report from Alice Hyde had, in fact, shown the significant injuries to the Plaintiff's lower back, this page was removed from the file held by DOCCS. This report, in full, had been confirmed to the Plaintiff by Nurse FNU Clemens. See ¶ 39, *supra*.

63. On January 29th, 2014, the Plaintiff saw Dr. ADAMS. During this visit, Defendant Dr. ADAMS, in a complete abrogation of duties as the CCF medical officer, and in violation of his legal duties under the Constitution, and finally, in violation of his oath as a doctor, told the Plaintiff: "I can't do anything to fix you, you're going home soon anyway."[4]

64. Two weeks later, on February 11th, 2014, the radiologist showed up at physical therapy to inquire as to how the Plaintiff was faring. When informed by the Plaintiff that they were only treating him for his T12 injury, the radiologist asked the physical therapist, in the Plaintiff's presence, if he had looked at Mr. ALKE's x-rays. When the physical therapist responded that he had not done so, the radiologist retrieved them and informed the physical therapist that the Plaintiff was suffering from multiple fractures of the spinal area, and showed the x-rays to the physical therapist.

65. In or around August 2014, a nerve damage test was finally conducted on the Plaintiff. This test confirmed that the Plaintiff had, in fact, suffered nerve damage at the base of the spine. It also made clear that an MRI was clearly warranted in this situation.

66. In or around January 2015, following the filing of a grievance by the Plaintiff, upon information and belief, Defendant ADAMS was finally directed, by Defendant RACETTE to have all of the Plaintiff's injuries fully examined and fully and competently

---

[4] This ought not be much of a surprise. Dr. ADAMS had his license to practice medicine suspended for a three year period on February 4th, 2006, with the last 24 months suspended, but was placed on a probationary period of three years. According to the available records from the Office of Professional Medical Conduct, the reason was "[t]he physician admitted guilt to the charge of negligence on more than one occasion." OPMC Consent Order No. 06-29. See Exhibit E.

As a result of this conviction, Dr. ADAMS "voluntarily resigned" from his position as a physician authorized to "render[] medical or other treatment and care to individuals who have suffered work-related injuries or illnesses." Order of the N.Y.S. Workers' Compensation Board 046-163 (Sept. 15, 2006).

diagnosed. See Exhibit C.

67. Upon information and belief, Defendant ADAMS did nothing at all in response to the direction of Defendant RACETTE.

68. Even with the exiting medical records available at the time, other than the prescription for pain medication, and the physical therapy sessions, the Plaintiff received no other treatment, at all, while at CCF under the custody and care of Defendant DOCCS.

69. In the aftermath of this period, and until the Plaintiff's parole on October 17, 2015, the Plaintiff continued to seek medical treatment and attention to his condition. On November 13th, 2014, he wrote a letter to Defendant JOHNSON requesting that someone other than Defendant Dr. ADAMS treat him, and that his repeated requests for further tests and x-rays were ignored. The letter summed up his case and arguments succinctly and pointedly. This letter, along with other prior communications were totally and unprofessionally ignored by Defendant JOHNSON. See Exhibit F.

70. From the time of his original complaint in August 2013, until the time of his release the Defendants treated the Plaintiff, for his medical condition, by merely treating the symptoms. Month after month the Plaintiff complained about the excruciating pain in his lower back, his inability to walk, or sit for any extended period of time, the fact that he entered the custody and care of the DOCCS in good health, and that his injury dated from August 4th, 2013. The response of the Defendants was, on a monthly basis, to keep pre-scribing an addictive pain killer, Percocet 5/325.[5] See Exhibit I, Medical Reports from

---

[5] Percocet 5/325 is a strong pain killer with some very dangerous side effects, including, but not limited to nausea, blurred vision, constipation, and numerous other dangers. As an opioid it can lead to more serious issues, *viz.*,

September 9, 2014, Oct. 6, 2014, January 14, 2015, February 9, 2015, March 6, 2015, April 2, 2015, May 1, 2015, June 24, 2015, July 24, 2015, and August 19, 2015.

71. On October 17, 2015, Plaintiff ALKE was paroled and released from physical custody of the DOCCS.

72. The Plaintiff has, since his release from the custody and care of the Defendants, been under permanent treatment and care of a number of physicians and therapists with regard to the injuries suffered as set forth herein.

73. Among the diagnoses found were:

    a.   Grade-1 retrolisthesis of L4/L5;

    b.   Diffuse disc bulge at the L4/L5 disc space;

    c.   Disc herniation with associated annular tear; and

    d.   Retropulsion of the upper posterior aspect of the superior endplate of T12 into the spinal canal.

74. As a result thereof, as the Plaintiff has made plain to his primary care physician: he "has tremendous back pain and feels as there is a fracture of [his] back . . . patient is unable to sit or stand without excruciating pain. patient is unable to function in this manner."

---

Serious adverse reactions which may occur with Percocet are similar to those observed with other opioid analgesics; they include respiratory depression, apnea (periodic stop of breathing), respiratory arrest, circulatory depression, hypotension (low blood pressure), shock, and death. This opioid is often a drug of choice for addictive use and can easily lead to dependency.

*http://www.rxlist.com/percocet-side-effects-drug-center.htm*

The lack of professionalism of Defendant Dr. ADAMS is clearly demonstrated by his routine dispensing of this drug, treating it as if it was Tylenol.

For a more complete description of the potential dangers of this drug see the National Institutes for Health description at:

*http://dailymed.nlm.nih.gov/dailymed/archives/fdaDrugInfo.cfm?archiveid=54615*

75. Upon information and belief, the Plaintiff is now permanently disabled.

**CAUSE OF ACTION FIRST**

42 U.S.C. § 1983 AS AGAINST NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION, SUPERINTENDENT
STEVEN RACETTE, DR. RICHARD ADAMS, BRIAN FISCHER, FNU
TAYLOR, VONDA JOHNSON, JOHN DOES 1 through 20

76. Plaintiff hereby incorporates, in their entirety, each and every paragraph of this

Complaint and by reference makes said paragraphs a part hereof as if fully set forth

herein.

77. At all relevant times herein the Defendants were acting under color of state law.

78. The aforementioned Defendants, by acting with deliberate indifference to ERIK ALKE's

serious medical needs, deprived Mr. ALKE of the rights, remedies, privileges, and

immunities guaranteed to every citizen in the United States, in violation of 42 U.S.C. §

1983, including, but not limited to, the rights guaranteed by the Eighth and Fourteenth

Amendments to the United States Constitution.

79. The aforementioned Defendants had knowledge of, or had reason to believe, that the

Plaintiff was suffering from a serious medical and debilitating condition, and knew, or

should have known, that he required medical attention which was deliberately and

knowingly denied to him.

80. Defendants knowingly, intentionally, and without regard for the consequences attendant

thereto, prescribed addictive opioids (Percocet) to the Plaintiff. See ¶ 70, *supra*.

81. Defendants JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5,

and JOHN DOE 6, knew or should have known of the Plaintiff's medical and debilitating

condition, yet they failed to provide proper care in the transfer of the Plaintiff to Alice

Hyde Medical Center and Albany Medical Center as set forth *supra*.

82. Defendants JOHN DOE 7 through JOHN DOE 15, knew or should have known the seriousness of the nature of the Plaintiff's injury when the desk fell on him; furthermore, they knew, or should have known, that the desk was of such a weight that one person alone could not physically handle it. Nevertheless, outside of permitting the Plaintiff to go to the medical facility at CCF, Defendants JOHN DOE 7 through JOHN DOE 15 did nothing at assist the Plaintiff as it relates to this incident.

83. Defendants Dr. ADAM, Dr. JOHNSON, and FNU TAYLOR were responsible for providing medical care and treatment to the Plaintiff, yet they acted with deliberate and knowing indifference to his medical condition, by among other things: merely treating the pain, continual prescription of addictive pain killers (such as Percocet), misdiagnosing MRIs and x-rays, ignoring proper and established medical procedures and protocols, and otherwise acting in an unprofessional and irresponsible manner to the detriment and injury of the Plaintiff.

84. Defendants STEVEN RACETTE and BRIAN FISHCER, as the administrative heads of CCF and DOCCS, respectively, are charged with the responsibility and care of the inmates housed and in custody at Clinton Correctional Facility. As such, they are statutorily and constitutionally responsible for the proper medical care and treatment of said inmates.

85. Defendant DOCCS is directly liable for Plaintiff's damages due to the following policies or customs of inadequate training, supervision, discipline, screening, or hiring, which were in effect at the time of this incident and which were the underlying cause of the Plaintiff's injuries:

   a. Defendants DOCCS failed to adequately train and supervise DOCCS personnel

(including, but not limited to, Defendants JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, and JOHN DOE 6, and JOHN DOE 7 through JOHN DOE 15, DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU TAYLOR, and STEVEN RACETTE) as to the medical attention and treatment of persons in the custody and care of the DOCCS as mandated by DOCCS policies and procedures, the requirements of the State of New York, and the United States Constitution and the failure to train such personnel, that had the obvious consequence of leading to constitutional violations in deliberate indifference and reckless disregard of the health and welfare of the Plaintiff.

86. Established procedures of the DOCCS mandate proper medical treatment of inmates.

87. The Defendant DOCCS failed to adequately train and supervise its personnel, including, but not limited to DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU TAYLOR, and STEVEN RACETTE, and JOHN DOE 16 through JOGN DOE 20, to assure that the Plaintiff received the medical care and treatment as required under its own Standards and Procedures. As a direct and proximate cause thereof, the Plaintiff suffered, and continues to suffer, serious and disabling pain and suffering as related to said injuries.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly, severally and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, and such other relief as is deemed to be just and equitable.

### CAUSE OF ACTION SECOND

42 U.S.C. § 1983 AS AGAINST SUPERINTENDENT STEVEN RACETTE, BRIAN FISCHER, and VONDA JOHNSON, JOHN DOES 1 through 20

88. Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth

herein.

89. At all relevant times herein the Defendants were acting under color of state law.

90. The aforementioned Defendants, by acting with deliberate indifference to Plaintiff's serious medical needs, deprived the Plaintiff of the rights, remedies, privileges, and immunities guaranteed to every citizen in the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, the rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

91. Defendants STEVEN RACETTE, BRIAN FISCHER, and VONDA JOHNSON developed and implemented a system of health care that they knew was contrary to good and accepted medical treatment in that it permits incarcerating patients with known illnesses and disabilities in conditions without providing them with adequate health treatment.

92. Defendants STEVEN RACETTE, BRIAN FISCHER, and VONDA JOHNSON knew that the system they developed and implemented caused seriously injured inmates to be incarcerated and denied adequate medical treatment and care even though such incarceration was known to have a permanent and serious and life-long impact on the subject individual. The actions by the aforementioned Defendants led to, and resulted in, an increased risk of permanent disability.

93. By implementing and effecting such a policy, said Defendants demonstrated deliberate and knowing indifference towards Plaintiff's serious medical needs, including his increased risk of lifetime disability, pain and suffering.

94. In addition, Defendants STEVEN RACETTE, BRIAN FISCHER, and VONDA JOHNSON acted with deliberate indifference to Plaintiff's serious medical needs by

failing to adequately train and supervise Defendants Dr. ADAMS, FNU TAYLOR, and JOHN DOES 16 through 20 regarding, among other things:

    a. following and implementing relevant and applicable rules and regulations of the DOCCS and relevant sections of the N.Y. Corrections Law including Section 137, therein;

    b. documenting all treatment and changes in treatment;

    c. communicating all treatment and changes in treatment to all necessary employees;

    d. evaluating inmates, including inmates with disabilities and injuries for possible permanent and lifetime pain and suffering;

    e. diagnosing and treating inmates with disabling injuries;

    f. ensuring that inmates' diagnoses, and/or treatment remains consistent during and after facility transfers; and

    g. processing and properly treating inmates during all travel.

95. As a direct and proximate result of the aforementioned acts and failures to act, the Plaintiff has suffered damages in the form of physical injuries, permanent disability, and conscious pain and suffering up to the present and likely for the rest of his life, all caused by the failures as set forth herein.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly, severally and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, and such other relief as is deemed to be just and equitable.

## <u>CAUSE OF ACTION THIRD</u>

VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §
12101, *et seq.* ("ADA") AS AGAINST DEFENDANTS DOCCS, DR. RICHARD
ADAMS, DR. VONDA JOHNSON, FNU TAYLOR, and JOHN DOES 1
THROUGH 20

96. Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

97. At all relevant times herein the Defendants were acting under color of state law.

98. Upon his injury Plaintiff ALKE was a qualified individual with a disability as defined in the Americans with Disabilities Act. He suffered from physical impairments that substantially limited one or more major life activities, including but not limited to, ambulation, sitting, standing, bending, or any other normal physical activity associated with everyday life, and interacting with others. He has records of suffering from such impairments; and/or he was regarded as suffering from such impairments.

99. As a State prisoner, Plaintiff ALKE met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the aforementioned Defendants. 42 U.S.C. § 12102(2); 42 U.S.C. § 12131(2). See *Robinson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007).

100. DOCCS is a "public entity" as defined under 42 U.S.C. § 12131(1)(B). *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209-210 (1998). See also 42 U.S.C. § 12101(a)(3).

101. DOCCS, and Defendants DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU TAYLOR and JOHN DOES 1 THROUGH 20, discriminated against Plaintiff ALKE by, among other acts and failures to act:

    a.   failing to treat Plaintiff ALKE's injury at the time of the injury;

1    b.  delaying in proper diagnosis in the ordering of x-rays and MRI's on a timely

2        basis;

3    c.  continuing to assign to Plaintiff ALKE regular duty and assignments when he was

4        disabled and unable to perform said assignments;

5    d.  prescribed addictive opioid pain-killers to the Plaintiff, disregarding the

6        consequences of such action;

7    e.  failing to provide Plaintiff ALKE with adequate and appropriate services,

8        diagnoses, and treatment during his period of incarceration; and

9    f.  failing to keep Plaintiff ALKE safe from risks of harm arising from his health

10       needs.

11   102.  DOCCS, and Defendants DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU

12       TAYLOR and JOHN DOES 1 THROUGH 20, discriminated against Plaintiff ALKE by,

13       among other acts and failures to act,

14   a.  failing to timely provide Plaintiff ALKE with an interview and assessment by an

15       assigned and professional diagnostician, as required by DOCCS Directive Nos.

16       2614 and 4065;

17   b.  effectively excluding the Plaintiff from participation in DOCCS programs

18       designed to prepare inmates for their eventual release and re-integration into

19       society;

20   c.  by failing to house Plaintiff ALKE in an appropriate and disability prepared cell

21       and or facility;

22   d.  by failing to provide Plaintiff ALKE with adequate and appropriate services,

23       diagnoses, and treatment during his period of incarceration at CCF; and

e. by failing to keep Plaintiff ALKE safe from risks of self-harm, or harm from others, arising from his health needs.

103. The aforementioned Defendants discriminated against Plaintiff ALKE on the basis of his disability in violation of the ADA. 42 U.S.C. § 12132.

104. Defendants DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU TAYLOR and JOHN DOES 1 THROUGH 20 are sued in their official capacities only.

105. As a direct and proximate result of the aforementioned acts and failures to act, Plaintiff ALKE has suffered permanent injury, lifetime disabling harm, and conscious pain and suffering up to and including this date and on an ongoing basis caused by the failure to properly treat his health needs.

106. Plaintiff seeks compensatory damages, including pain and suffering, against the aforementioned defendants, in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly, severally and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, and such other relief as is deemed to be just and equitable.

## CAUSE OF ACTION FOURTH

VIOLATIONS OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794,
AS AGAINST DEFENDANTS DOCCS, DR. RICHARD ADAMS, DR.
VONDA JOHNSON, FNU TAYLOR, and JOHN DOES 1 THROUGH 20

107. Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

108. At all times relevant herein, Plaintiff ALKE was a qualified individual with a disability as defined in the ADA. See ¶¶ 97, 98 and 99, *supra*.

109. He suffered from serious disabling impairments as a direct result of the injuries suffered

while incarcerated at CCF, that substantially limited one or more major life activities, including but not limited to, ambulation, sitting, standing, bending, or any other normal physical activity associated with everyday life, and interacting with others. He has records of suffering from such impairments; and/or he was regarded as suffering from such impairments.

110. As a State prisoner, under the custody and care of Defendant DOCCS, Plaintiff ALKE met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the aforementioned defendants. 29 U.S.C. § 794. See *Harrington v. Vadlamudi*, 2014 WL 4829483 at *3 (N.D.N.Y. 2014); *Allah v. Goord*, 405 F. Supp.2d 265, 249 (S.D.N.Y. 2005).

111. DOCCS is a public entity as defined under 42 U.S.C. § 12131(1)(B). See ¶ 99, *supra*.

112. DOCCS is a direct recipient of federal assistance.

113. DOCCS, and Defendants DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU TAYLOR and JOHN DOES 1 THROUGH 20, discriminated against Plaintiff ALKE by, among other acts and failures to act

    a. Failure to properly diagnose and treat the Plaintiff's injury in a timely and appropriate manner,

    b. Failure to provide proper counseling and assistance so that the Plaintiff could integrate into society upon his release from incarceration,

    c. Failure to observe proper protocols in the prescribing of medications, specifically the reckless prescribing of addictive opioids ( see ¶ 70, *supra*) without any regard, whatsoever, for the consequences on the Plaintiff,

    d. Failure to provide the necessary and appropriate medical care, rehabilitation, and

1     treatment when he was under DOCCS custody and care, and

2     e. Failure to assure that upon his continued incarceration proper and appropriate

3        work assignments, nutrition, and physical therapy were provided as based upon

4        his debilitating condition.

5     104. DOCCS and Defendants DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU

6        TAYLOR and JOHN DOES 1 THROUGH 20, discriminated against Plaintiff ALKE by,

7        among other acts and failures to act, failing to timely provide the Plaintiff with proper

8        interview and assessment as to his physical condition, especially as it deter-iorated over

9        time, failing to properly house the Plaintiff and provide the necessary bed and rest area

10       attendant to his condition, failing to set forth a medically approved and prescribed

11       treatment plan for his release, failing to provide the Plaintiff with adequate medical care,

12       treatment and diagnoses all arising from the condition as caused by the negligence of the

13       Defendants.

14    105. The aforementioned Defendants discriminated as against the Plaintiff solely and

15       exclusively on the basis of his disability in violation of Section 504 of the Rehabilitation

16       Act. 29 U.S.C. § 594.

17    106. Defendants DOCCS, DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU

18       TAYLOR and JOHN DOES 1 THROUGH 20, are sued in their official capacity only.

19    107. As a direct and proximate result of the aforementioned acts and failures to act, Plaintiff

20       ALKE is currently and permanently physically disabled and unable to function as a

21       normal person would, and has suffered damages in the form of physical injuries, mental

22       pain and suffering, and conscious pain and suffering up to and during, and continuing

23       during the pendency of this action, including, but not limited to, the pain and suffering

caused by the failure to properly treat his mental health needs.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly, severally and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, and such other relief as is deemed to be just and equitable.

## CAUSE OF ACTION FIFTH

### COMMON LAW NEGLIGENCE AS AGAINST DEFENDANTS DOCCS, DR. RICHARD ADAMS, DR. VONDA JOHNSON, STEVEN RACETTE, BRIAN FISCHER, FNU TAYLOR, and JOHN DOES 1 THROUGH 20

108. Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

109. The aforementioned and named Defendants have a duty of care to protect inmates and patients in their care from injury.

110. In addition, thereto, when it is known, or should reasonably be known, that an inmate, as a result of an injury, is predisposed to further pain, suffering, and injury, including the possibility of permanent disability, the aforementioned and named Defendants' duty of care includes the provision of reasonable care to prevent such harm.

111. Indeed, the Plaintiff, while under the custody and care of Defendants repeatedly and consistently reported constant and debilitating pain and suffering to the Defendants, or their agents.

112. The aforementioned and named Defendants had, or should have had, knowledge and constructive knowledge of the nature of the Plaintiff's injuries, and should have taken appropriate and necessary measures to minimize the effect of, and correct such injuries.

113. The aforementioned and named Defendants had actual and constructive knowledge of the extent and nature of the Plaintiff's injuries based upon the medical exams conducted

at both Alice Hyde and Albany Medical Center.

114. Despite such knowledge, the aforementioned and named Defendants negligently failed to provide adequate and medically appropriate care to the Plaintiff.

115. The aforementioned and named Defendants breached their duty to the Plaintiff by such negligent action and behavior.

116. Among the actions committed by the Defendants, in breach of their duty owed to the Plaintiff, were:

    a.   Failure to properly diagnose and treat the Plaintiff's injury in a timely and appropriate manner,

    b.   Failure to provide proper counseling and assistance so that the Plaintiff could integrate into society upon his release from incarceration,

    c.   Failure to observe proper protocols in the prescribing of medications, specifically the reckless prescribing of addictive opioids ( see ¶ 70, *supra*) without any regard, whatsoever, for the consequences on the Plaintiff,

    d.   Failure to provide appropriate methods of transportation, attendant to his condition, when the Plaintiff was sent to outside medical facilities,

    e.   Failure to provide the necessary and appropriate medical care, rehabilitation, and treatment when he was under DOCCS custody and care, and

    f.   Failure to assure that upon his continued incarceration proper and appropriate work assignments, nutrition, and physical therapy were provided as based upon his debilitating condition.

117. Defendants, jointly and severally, consciously disregarded the serious medical risk posed by Plaintiff's injuries by, among other things, failing to provide treatment as

1  dictated by the Plaintiff's medical condition.

2  118. As a direct and proximate cause thereof, the Plaintiff suffered, and continues to suffer,

3  serious pain and suffering as related to said injuries.

4  WHEREFORE, Plaintiff demands judgment against the Defendants, jointly, severally and/or

5  in the alternative, for compensatory damages, punitive damages, interest, costs of suit, and such

6  other relief as is deemed to be just and equitable.

7  ## CAUSE OF ACTION SIXTH

8  COMMON LAW MINISTERIAL NEGLECT AS AGAINST DEFENDANTS
9  DOCCS, DR. RICHARD ADAMS, DR. VONDA JOHNSON, STEVEN RACETTE,
10 BRIAN FISCHER, FNU TAYLOR, and JOHN DOES 1 THROUGH 20

11 119. Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint

12 and by reference makes said paragraphs a part hereof as if fully set forth herein.

13 120. The aforementioned Defendants have a ministerial duty owed to the Plaintiff. *Lauer v.*

14 *City of New York*, 95 N.Y.2d 95, 99, 711 N.Y.S.2d 112 (2000);

15 121. The Defendants breached said ministerial duty when, they knew, or should reasonably

16 have known, that an inmate, as a result of an injury, is predisposed to further pain,

17 suffering, and injury, including the possibility of permanent disability, the

18 aforementioned and named Defendants duty of care includes the provision of reasonable

19 care to prevent such harm.

20 122. Among the ministerial duties breached by the Defendants included, but were not

21 limited to the following actions committed by the Defendants, in breach of their

22 ministerial duty owed to the Plaintiff, were:

23      a.  Failure to properly diagnose and treat the Plaintiff's injury in a timely and

24          appropriate manner,

b. Failure to provide proper counseling and assistance so that the Plaintiff could integrate into society upon his release from incarceration,

c. Failure to observe proper protocols in the prescribing of medications, specifically the reckless prescribing of addictive opioids ( see ¶ 70, *supra*) without any regard, whatsoever, for the consequences on the Plaintiff;

d. Failure to provide appropriate methods of transportation, attendant to his condition, when the Plaintiff was sent to outside medical facilities,

e. Failing to properly document the Plaintiff's condition;

f. Providing medical diagnoses and comments (*e.g.*, falsely representing in medical records that the Plaintiff had an addiction problem, see ¶ 51, *supra*);

g. Failure to provide the necessary and appropriate medical care, rehabilitation, and treatment when he was under DOCCS custody and care, and

h. Failure to assure that upon his continued incarceration proper and appropriate work assignments, nutrition, and physical therapy were provided as based upon his debilitating condition.

123. Defendants DR. RICHARD ADAMS, DR. VONDA JOHNSON, and JOHN DOES 1 THROUGH 20, breached their ministerial duty to the Plaintiff by failing to adequately administer to Plaintiff a full health screening upon his arrival at CCF.

124. The Plaintiff made repeated and consistent complaints to the Defendants, or their agents, of his pain and suffering, all emanating from the one incident that is referenced above. See ¶¶ 32-35, *supra*.

125. As a direct and proximate cause thereof, the Plaintiff suffered, and continues to suffer, serious pain and suffering as related to said injuries.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly, severally and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, and such other relief as is deemed to be just and equitable.

## CAUSE OF ACTION SEVENTH

VIOLATION OF THE NEW YORK STATE CONSTITUTION AS AGAINST DEFENDANTS DOCCS, DR. RICHARD ADAMS, DR. VONDA JOHNSON, STEVEN RACETTE, BRIAN FISCHER, FNU TAYLOR, and JOHN DOES 1 THROUGH 20

126. Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

127. By its policies and procedures and practices, the aforementioned Defendants vio-lated the right of the Plaintiff, a prisoner with serious physiological issues proximate-ly caused by the actions and inactions of the aforementioned Defendants, to be free from cruel and unusual punishment as guaranteed by Article One, Section Five of the New York Constitution. See ¶ 4, *supra*.

128. As a matter of policy and practice, the aforementioned Defendants acted with deliberate indifference to the medical needs of the Plaintiff.

129. The deliberate and knowing indifference to the Plaintiff's medical condition, included, but was not limited to the following:

    a. Failure to properly diagnose and treat the Plaintiff's injury in a timely and appropriate manner;

    b. Providing medical diagnoses and comments (*e.g.*, falsely representing in medical records that the Plaintiff had an addiction problem, see ¶ 51, *supra*);

    c. Failure to properly document the Plaintiff's medical condition;

    d. Failure to observe proper protocols in the prescribing of medications,

specifically the reckless prescribing of addictive opioids ( see ¶ 70, *supra*) without any regard, whatsoever, for the consequences on the Plaintiff;

    e. Failure to provide proper counseling and assistance so that the Plaintiff could integrate into society upon his release from incarceration;

    f. Failure to provide appropriate methods of transportation, attendant to his condition, when the Plaintiff was sent to outside medical facilities;

    g. Failure to provide the necessary and appropriate medical care, rehabilitation, and treatment when he was under DOCCS custody and care; and

    h. Failure to assure that upon his continued incarceration proper and appropriate work assignments, nutrition, and physical therapy were provided as based upon his debilitating condition.

130. As a direct and proximate cause thereof, the Plaintiff suffered, and continues to suffer, serious pain and suffering as related to said injuries.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly, severally and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, and such other relief as is deemed to be just and equitable.

## CAUSE OF ACTION EIGHTH

### PUNITIVE DAMAGES AS AGAINST DEFENDANTS DOCCS, DR. RICHARD ADAMS, DR. VONDA JOHNSON, STEVEN RACETTE, BRIAN FISCHER, FNU TAYLOR, and JOHN DOES 1 THROUGH 20

131. Plaintiff hereby incorporates, in its entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

132. The actions and/or omissions of Defendants DOCCS, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, JOHN DOE 6, and JOHN DOE 7 through

JOHN DOE 20, DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU TAYLOR, and STEVEN RACETTE complained of herein were unlawful, conscience shocking, unconstitutional, and were performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly, in bad faith, and in such a manner to entitle the Plaintiff to a substantial award of punitive damages against one, some or all of the Defendants.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly, severally and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, and such other relief as is deemed to be just and equitable.

## DAMAGES

133. Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

134. As a direct and proximate result of the aforementioned actions and omissions of the Defendants, Plaintiff was injured and damaged. The damages for which Plaintiff seeks compensation from the Defendants, both jointly and severally, include, but are not limited to, the following:

   a. emotional pain and suffering of a past, present, and future nature;

   b. loss of enjoyment of life of a past, present, and future nature;

   c. fright, fear, aggravation, humiliation, anxiety, and emotional distress of a past, present, and future nature as a result of the injuries sustained as a result of the illegal actions of Defendants DR. RICHARD ADAMS, DR. VONDA JOHNSON, FNU TAYLOR, JOHN DOES 1 through 10;

   d. loss of earning capacity;

e.   attorney fees (Civil Rights Act) pursuant to 42 U.S.C. § 1988;

f.   attorney fees (Rehabilitation Act) pursuant to 29 U.S.C. § 794a(b);

g.   attorney fees (Americans with Disabilities Act) pursuant to 42 U.S.C. § 12133;

h.   punitive damages against the applicable Defendants;

i.   pre-and post-judgment interest;

j.   declaratory judgment and injunctive relief holding that the policies, practices or customs of Defendants, complained of herein are illegal and unconstitutional; and

k.   all such relief, both general and specific, to which Plaintiff may be entitled to under the premises.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly, severally and/or in the alternative, for compensatory damages, punitive damages, interest, costs of suit, and such other relief as is deemed to be just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues.  F.R.Civ.P. Rule 38.

Erik Alke
By his Attorney:

LAW OFFICE OF BERNARD V. KLEINMAN, PLLC

By _____

Bernard V. Kleinman, Esq.
attrnylwyr@yahoo.com
2 Westchester Park Dr.
Suite 418
White Plains, NY 10604
Tel. 914.644.6660
Fax 914.694.1647
N.D.N.Y. Bar No. 601825

Dated: July _11_, 2016