UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ERIK ALKE,

                    Plaintiff,

        -v-                                            9:16-CV-845

DR. RICHARD ADAMS,
Clinton Correctional Facility,
and FNU TAYLOR, Nurse;
Clinton Correctional Facility,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

LAW OFFICE OF BERNARD V.           BERNARD V. KLEINMAN, ESQ.
   KLEINMAN, PLLC
108 Village Square, Suite 313
Somers, NY 10589

HON. BARBARA D. UNDERWOOD     CHRISTOPHER J. HUMMEL, ESQ.
Attorney General of the State of New York   Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On July 11, 2016, plaintiff Erik Alke ("Alke" or "plaintiff") filed this civil rights action against defendants New York State Department of Corrections and Community Supervision ("DOCCS"), DOCCS Commissioner Brian Fischer ("Commissioner Fischer"), Clinton Correctional Facility ("Clinton C.F.") Superintendent Steven Racette ("Superintendent

Racette"), Clinton C.F. Health Services Director Vonda Johnson ("Director Johnson"), Dr. Richard Adams ("Dr. Adams"), and Nurse Jeffrey Taylor ("Nurse Taylor").

Alke's eight-count complaint alleged defendants violated his rights under 42 U.S.C. § 1983 and the Eighth Amendment when they failed to properly treat a serious back injury he suffered while performing inmate work detail. Plaintiff also brought related claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, the New York State Constitution, and state common law.

On October 27, 2016, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) seeking the partial dismissal of Alke's civil rights complaint. In particular, defendants' pre-answer motion sought dismissal of the: (1) § 1983 claims against DOCCS; (2) § 1983 individual-capacity claims against Commissioner Fischer, Superintendent Racette, and Director Johnson; and (3) § 1983 official-capacity claims, ADA and Rehabilitation Act claims, and state common law claims against all of the named defendants.

On August 9, 2017, a Memorandum–Decision & Order (the "August 9 MDO") issued granting defendants' motion to dismiss in its entirety. As a result, only plaintiff's § 1983 claims against Dr. Adams and Nurse Taylor (collectively "defendants") alleging deliberate medical indifference in violation of the Eighth Amendment remained for discovery.[1]

On August 31, 2018, defendants moved under Rule 56 seeking summary judgment on Alke's remaining claims. According to defendants, no reasonable jury could return a verdict in plaintiff's favor against either Dr. Adams or Nurse Taylor because the evidence establishes plaintiff received constitutionally adequate medical care. Plaintiff opposes the motion, which

---

[1] Plaintiff later sought partial reconsideration, vacatur, and/or reversal of the August 9 MDO to the extent that it dismissed a § 1983 medical indifference claim against Director Johnson. That request was denied on April 11, 2018.

has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**

In connection with their motion for summary judgment, defendants submitted for consideration a statement of the facts they contend are undisputed and material for purposes of evaluating Alke's § 1983 claims against Dr. Adams and Nurse Taylor. Defs.' Rule 7.1(a)(3) Statement, Dkt. No. 54-1 ("Rule 7.1 Statement").

For whatever reason, though, Alke's counsel did not include as part of his opposition filings any responsive statement outlining the facts he believes are in dispute and/or should also be considered in deciding whether or not this case should go to a jury. See, e.g., Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (Cardamone, J.) (emphasizing that "the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried").

Counsel's omission is frustrating for several reasons, not the least of which being that the failure to file such a document by the party opposing summary judgment runs afoul of this District's relevant local rule. See N.D.N.Y.L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts.").

Counsel's neglectfulness also threatens to result in a disservice to his client, since it provides a ready basis on which to deem admitted the moving party's factual showing in support of summary disposition of his claims. N.D.N.Y.L.R. 7.1(a)(3) (warning that the Court "shall deem admitted any properly supported facts . . . that the opposing party does not specifically controvert"); see also Cross v. State Farm Ins. Co., 926 F. Supp. 2d 436, 441

(N.D.N.Y. 2013) (McAvoy, J.) (cautioning that the responsive statement described in Local Rule 7.1(a)(3) is "not a mere formality").

The absence of a formal responsive statement of facts is also an imposition on the Court, which did not implement Local Rule 7.1(a)(3) out of a desire to impose gratuitous complexity on the summary judgment mechanism but rather in an effort to streamline the process by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.

After all, the lion's share of discovery produced by the parties in federal civil litigation is never even made available to the Court. See, e.g., N.D.N.Y.L.R. 26.2 (directing that parties shall not file such material except to support a motion or some other request for relief). As a result, counsel's inattentiveness to Local Rule 7.1(a)(3) leaves open the possibility that compliance with this mandate would have generated a more balanced or accurate representation of the factual landscape surrounding the parties' dispute.

To be clear, the requirement that a non-movant submit a responsive statement of material facts in connection with its opposition to summary judgment is not the sort of newfangled procedural requirement that might reasonably be expected to trip up an unsuspecting-but-well-intentioned litigant.[2]

Just the opposite, in fact: the party-driven procedure for identifying factual disputes that is set forth in Local Rule 7.1(a)(3) mirrors the practice adopted by every single federal judicial district in the Second Circuit. W.D.N.Y. Loc. R. Civ. P. 56(a)(2); S. & E.D.N.Y. Loc. Civ. R. 56.1(b); D. Conn. Loc. R. Civ. P. 56(a)(2)(i); D. Vt. L.R.P. 56(b).

---

[2] A copy of the local rules, including Local Rule 7.1(a)(3), are available electronically on the Northern District's website, http://www.nynd.uscourts.gov/local-rules, and in hard copy at the Utica, Syracuse, Albany, and Binghamton offices of the Clerk of the Court, http://www.nynd.uscourts.gov/maps-locations-hours.

In spite of all this, though, the Court declines to simply accept as gospel defendants' factual recitation of Alke's interactions with Dr. Adams and Nurse Taylor. Instead, the portions of the discovery record made available through the summary judgment filings has been independently examined for the presence of any genuine disputes that might warrant a trial. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (holding a district court may conduct an independent review of the available record "even where one of the parties has failed to file [the required local rule] statement").

Therefore, the following facts are drawn from a review of the parties' submissions and in particular defendants' Statement of Material Facts, Dkt. No. 54-1, excerpts of Alke's deposition testimony, Ex. A to Dkt. No. 54-2, plaintiff's sworn declaration in opposition to summary judgment, Dkt. No. 56-1, and the other proffered exhibits.[3]

On August 4, 2013, Alke and three other inmates were assigned to move some office furniture, including a solid oak desk, from the Clinton C.F. Watch Commander's Office to another location within the facility. Alke Decl., Dkt. No. 56-1, ¶¶ 3-4. Although plaintiff and the other members of his assigned work detail managed to move the desk out of the office and down a hallway, it quickly became lodged in a nearby stairwell. Id. ¶ 4.

When Alke "got down to look at the situation," a piece of the desk "slid down, and struck [him], and [he] fell to the [concrete] floor." Alke Decl. ¶ 5. Plaintiff "heard a crack in [his] lower back, around the coccyx bone." Id. Plaintiff was "pinned under the desk" for

---

[3] Alke's opposition memorandum includes citations to his complaint as support for certain assertions. See, e.g., Pl.'s Opp'n, Dkt. No. 56, 9. While factual allegations in the pleading were entitled to the presumption of truth when considering defendants' motion to dismiss, they do not receive the same treatment on summary judgment. Biswas v. Kwait, 576 F. App'x 58 (2d Cir. 2014) (summary order) (observing a plaintiff cannot rely on mere allegations in the complaint to defeat a properly supported motion for summary judgment). Accordingly, these assertions are credited only to the extent they are found to be supported by admissible evidence unearthed elsewhere.

- 5 -

"approximately five minutes." Id.

After getting free from underneath the desk, Alke walked to Medical Services, where he was seen by Nurse Taylor. Alke Dep. ¶ 6; Rule 7.1 Statement ¶ 2. Plaintiff is unsure of the precise timing, but believes it was some time in the evening, most likely "after 5:00 p.m." Ex. A to Hummel Aff., Dkt. No. 54-2, p.10 ("Alke Dep.").[4] Defendants confirm that Nurse Taylor is employed by Clinton C.F. as a "Registered Nurse II" and that he was on duty for the 2:00 p.m. to 10:00 p.m. shift in the "emergency room" that day. Rule 7.1 Statement ¶ 1; Taylor Decl., Dkt. No. 54-4, ¶¶ 1, 6.

Nurse Taylor examined Alke and asked him what happened. Alke Decl. ¶¶ 6-8; Rule 7.1 Statement ¶¶ 3-7; Alke Dep. at 11-14. At that time, Nurse Taylor did not observe "any bruising or marks," but made note of plaintiff's "guarded movements" and "determined that plaintiff had likely strained his back." Rule 7.1 Statement ¶¶ 3-4.

Alke acknowledges Nurse Taylor took "a very quick look at [his] back" but claims it took "all of [ ] two minute[s]," a period of time plaintiff characterizes as "nothing" and "purely cursory." Alke Dep. at 10-11; Alke Decl. ¶ 7. According to plaintiff, Nurse Taylor told him he "had only pulled a muscle, maybe bruised [his] kidneys," and advised him that he will "probably" urinate and defecate blood "for a couple of days." Id.

Defendants acknowledge Nurse Taylor may well advised Alke of the possibility of passing blood in his urine or feces. Rule 7.1 Statement ¶¶ 12-13. According to defendants, Nurse Taylor would have instructed plaintiff that those symptoms would be a reason to seek immediate medical attention. Id.

---

[4] Because only the excerpted portions of Alke's deposition offered by defendants are available for consideration, the cited page numbers correspond with those assigned by CM/ECF, the Court's internal system, rather than the pagination assigned by the reporting service.

Nurse Taylor placed Alke on bed rest for three days, advised him to increase his fluid intake, and explained that he could take ibuprofen as needed for the pain. Rule 7.1 Statement ¶ 5; Alke Dep. at 11-14. According to plaintiff, at that time Nurse Taylor *also* indicated to him that he "would be called back in three days to see a physician." Alke Decl. ¶ 7. Defendants deny this and instead claim Nurse Taylor instructed plaintiff that he should be the one to contact medical staff through "sick call" if he felt he needed further attention or if his symptoms worsened. Rule 7.1 Statement ¶¶ 6, 12-13.

Alke was not treated by Nurse Taylor on any other occasion than August 4 in the emergency room, and plaintiff did not ask to be held in the infirmary at that time because he felt threatened by an unidentified corrections officer who is not a named defendant. Rule 7.1 Statement ¶ 11; Alke Dep. 11-14, 16. Plaintiff left the emergency room, took ibuprofen for the pain, and spent three days on bed rest. Id. Plaintiff did not receive the call for a follow-up that he believed was coming on August 7. Alke Dep. at 13. Instead, plaintiff put in a request for sick call on August 8, the fourth day after his injury. Id. at 13, 15.

On August 9, 2013, the fifth day after his injury, Alke met with Dr. Adams to seek further treatment for his back. Alke Decl. ¶ 9; Rule 7.1 Statement ¶ 14; Alke Dep. at 17-18. According to plaintiff, Dr. Adams conducted only a "very cursory examination" and then "kick[ed him] out of his office." Alke Dep. at 18; Alke Decl. ¶¶ 10-11. Plaintiff describes an examination that involved, inter alia, lying down on his back and allowing Dr. Adams to roughly manipulate his legs. Alke Dep. at 19. In particular, plaintiff testified that Dr. Adams "grabbed [his] legs from the bottom and twisted from the knee" in a way that caused significant pain. Id. According to plaintiff, Dr. Adams then tried to throw him out of his office and plaintiff threatened to get a lawyer involved. Id. at 19-20.

In any event, Alke acknowledges that Dr. Adams ordered x-rays of his lumbar and thoracic spine following this August 9 exam. Rule 7.1 Statement ¶ 16; Alke Dep. at 20-21. According to defendants, Dr. Adams also prescribed plaintiff a course of Robaxin, a muscle relaxer. Rule 7.1 Statement ¶ 17; Adams Decl., Dkt. No. 54-3, ¶ 8. Dr. Adams asserts that he instructed plaintiff to follow-up with the medical unit in "five to seven days." Adams Decl. ¶ 8.

On August 16, Alke had x-rays taken and met with Nurse Practitioner Catherine Calley ("NP Calley") to seek additional treatment for his continuing back pain. Rule 7.1 Statement ¶ 19; Alke Dep. at 20.

On August 21, 2013, Alke met with Dr. Adams again. Rule 7.1 Statement ¶ 20; Alke Dep. at 22-23. According to defendants, Dr. Adams conducted another examination of plaintiff's back, prescribed additional medication, and provided plaintiff with a "work release" order. Rule 7.1 Statement ¶¶ 20-23; Adams Decl. ¶ 10. Plaintiff, however, insists that Dr. Adams did not conduct another examination of his back. Alke Dep. at 23-24. Instead, plaintiff asserts that Dr. Adams told him he had "a pulled muscle," that there was "nothing wrong with [him]," and that he should "get out" of his office. Id.

On September 4, 2013, Alke met with Dr. Adams again. Rule 7.1 Statement ¶ 24. Plaintiff acknowledges that he discussed the results of his x-rays with Dr. Adams, who told him he had a "compression fracture of T12." Alke Dep. at 24-25. Plaintiff also acknowledges that Dr. Adams provided him with a longer, two-month work release order. Id. at 26; Rule 7.1 Statement ¶ 27. However, plaintiff contends Dr. Adams denied his request to be referred to a specialist. Alke Dep. at 27. Instead, plaintiff states Dr. Adams just offered him narcotic pain medication. Id. at 25. Plaintiff did not want to take narcotics and refused. Id.

On October 2, 2013, Alke met with Dr. Adams again. Rule 7.1 Statement ¶ 32; Alke Dep. at 27-28. Dr. Adams ordered a colonoscopy that plaintiff refused because it would require him to stop taking the ibuprofen that was helping him cope with his pain. Id. at 28. This time around, Dr. Adams also offered plaintiff a non-narcotic medication for his symptoms. Alke Dep. at 32. After this visit, Dr. Adams ordered an MRI of plaintiff's back. Rule 7.1 Statement ¶ 34; Alke Dep. at 29-31.

On November 5 and December 3, 2013, Clinton C.F. officers transported Alke to Albany Medical Center for an MRI of his back. Alke Dep. at 33; Rule 7.1 Statement ¶¶ 35, 50. Plaintiff asserts that although he was in extreme pain during this trip, the officers made no attempt to accommodate his condition. Alke Decl. ¶ 13. Plaintiff believes these officers were not informed of the severity of his back pain. Id.

On December 20, 2013, Alke met with Dr. Adams again. Rule 7.1 Statement ¶ 40; Alke Dep. at 35. Dr. Adams reviewed the reports from plaintiff's imaging studies and referred him for physical therapy. Rule 7.1 Statement ¶¶ 42-43; Alke Dep. at 35. Plaintiff attended twelve physical therapy sessions between January 30, 2014 and March 14, 2014, and eight more between April 10, 2014 and May 2, 2014. Rule 7.1 Statement ¶ 44; Alke Decl. ¶ 15; Alke Dep. at 35-36. Plaintiff asserts he did not want to participate in the physical therapy but believed he could not refuse treatment because someone named Nurse Clemons told him "you have to follow through for them to see what to do next." Alke Dep. at 37-38.

Alke attended these physical therapy sessions and continued to meet with Dr. Adams on a monthly basis. Rule 7.1 Statement ¶¶ 44-55. In March of 2014, plaintiff discovered a "false claim" Dr. Adams had placed in his October 11, 2013 medical record. Alke Dep. at 42; Rule 7.1 Statement ¶ 56. According to plaintiff, this "false claim" was an entry indicating

plaintiff had refused a prescription for narcotics medication because he had a "past narcotic problem." Alke Dep. at 42-43; Rule 7.1 Statement ¶¶ 57-58.

Alke denies ever saying this and characterizes the medical entry as "an absolute lie." Alke Dep. at 42-43; Rule 7.1 Statement ¶¶ 57-58. According to defendants, Dr. Adams sought to correct plaintiff's medical record after being informed of the error. Rule 7.1 Statement ¶¶ 59-61. Plaintiff insists that this "false claim" should have disqualified Dr. Adams from continuing to treat him. Alke Dep. at 41.

In mid-2014, however, Alke relented and began taking Percocet, a narcotic medication Dr. Adam offered to prescribe for pain management. Alke Dep. at 43-44. Plaintiff characterizes this course of treatment as "totally irresponsibl[e]." Alke Decl. ¶ 15. Defendants' records establish that Dr. Adams also attempted to treat plaintiff's back pain with varying dosages of Elavil and Neurontin, two kinds of nerve pain medications. Rule 7.1 Statement ¶¶ 55, 62-76.

On July 29, 2014, Alke met with Dr. Adams again. Rule 7.1 Statement ¶ 71; Alke Dep. at 44. On this visit, Dr. Adams ordered an electromyogram, a diagnostic test used to study nerve conduction. Rule 7.1 Statement ¶ 72. Dr. Adams also continued to prescribe Percocet for pain relief. Id. ¶¶ 73-76. Plaintiff continued to meet with Dr. Adams through most of 2015. Id. ¶¶ 78-83. During these meetings, Dr. Adams refilled plaintiff's Percocet prescription and continued to authorize the use of ibuprofen for pain relief. Id. ¶ 82.

On October 21, 2015, after Alke was released from DOCCS custody, he met with several different doctors, including a neurosurgeon. Rule 7.1 Statement ¶¶ 85-89. In particular, plaintiff met with Dr. Craig Scheflin on October 21, 2015 and on September 27, 2017. Id. ¶¶ 85-86. Dr. Scheflin treated plaintiff with pain medications and injections. Id.

Alke also met with Dr. Dmitriy V. Kolesnik on eight occasions between March 25, 2016 and October 5, 2017. Rule 7.1 Statement ¶ 87. Like Dr. Scheflin, Dr. Kolesnik treated plaintiff with pain medication. Id.

Finally, on May 23, 2017, Alke met with Dr. Ahmed Latefi for a neurosurgical consult. Rule 7.1 Statement ¶ 89. Dr. Latefi ordered x-rays and an MRI, but ultimately did not recommend surgery. Id. ¶¶ 90-91. According to plaintiff, Dr. Latefi told him "nothing can be done anymore due to the amount of time." Alke Dep. at 45, 48.

### III. <u>LEGAL STANDARD</u>

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>Jeffreys v. City of N.Y.</u>, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. <u>Anderson</u>, 477 U.S. at 250 n.4. The failure to meet this burden warrants denial of the motion. <u>Id</u>. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for

trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Accordingly, summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## IV. **DISCUSSION**

Alke's medical-indifference claims are brought pursuant to 42 U.S.C. § 1983, which aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992); see also Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (explaining that § 1983 provides "a procedure for redress for the deprivation of rights established elsewhere"). Accordingly, a § 1983 claim requires a plaintiff to show (1) the deprivation of a right, privilege, or immunity secured by the Constitution and its laws by (2) a person acting under the color of state law. 42 U.S.C. § 1983.

The constitutional right identified by Alke in this case is secured by the Eighth Amendment, which "guarantees freedom from cruel and unusual punishment." Jones v. Westchester Cty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008). As relevant here, this guarantee "imposes a duty on prison officials to ensure that inmates receive adequate medical care." Id. (quoting Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006)).

"In order to successfully state an Eighth Amendment claim for medical indifference, a plaintiff must prove that a defendant was deliberately indifferent to a serious medical need." Nelson v. Deming, 140 F. Supp. 3d 248, 258 (W.D.N.Y. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Wright v. Goord, 554 F.3d 255, 258 (2d Cir. 2009).

"Subjectively, the official charged with deliberate indifference must act with a 'sufficiently culpable state of mind.'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). In other words, the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)); see also Lapierre v. Cty. of Nassau, 459 F. App'x 28, 29 (2d Cir. 2012) (summary order) ("Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the equivalent of criminal recklessness").

"The objective component requires that 'the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'" Hill, 657 F.3d at 122 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). Notably, "if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." Salahuddin, 467 F.3d at 280 (citation and internal

quotation marks omitted). In sum, the "essential test is one of medical necessity and not one simply of desirability." Hill, 657 F.3d at 123 (quoting Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986)).

This body of governing law is fatal to Alke's constitutional claims. Even accepting as true plaintiff's version of events, no rational jury could conclude that either Nurse Taylor or Dr. Adams were deliberately indifferent to any serious medical need.

To be sure, an inmate's properly supported assertion that he received "no treatment" by prison medical staff in response to a serious back injury—like the one described by Alke in this case—would warrant a jury trial on deliberate indifference. But there is a critical difference between actually having received "no treatment" as a factual matter and using some variation of the phrase "no treatment" as a kind of vernacular short-hand to communicate one's intense displeasure or disagreement with the treatment actually received, as Alke repeatedly does in both his declaration and his earlier deposition testimony. See, e.g., Alke Dep. at 18 (explaining that "[t]he only thing Dr. Adams did was kick me out of his office" really meant that he only "gave me a very cursory examination" that plaintiff "did not consider [to be] an exam").

That distinction makes all the difference in this case. Among other things, Alke acknowledges that Nurse Taylor took "a very quick look" at his back; in other words, plaintiff concedes Nurse Taylor conducted an initial assessment of his injury when plaintiff showed up in the emergency room on August 4. Plaintiff further acknowledges that Nurse Taylor diagnosed him with a strained back, placed him on bed rest for three days, advised him to increase his fluid intake, and explained that he could take ibuprofen as needed for the pain. Although plaintiff contends Nurse Taylor failed to follow through on a promise to have

- 14 -

plaintiff called back for a medical follow-up on the third day, the parties agree that plaintiff was able to put in his own sick call slip on day four, and was seen by Dr. Adams on August 9, the fifth day after his injury.

There is no dispute that Alke experienced significant pain following his injury. But bedside manner aside, plaintiff also admits, albeit grudgingly, that Dr. Adams conducted his own follow-up examination on August 9, including ordering x-rays of plaintiff's spinal cord. Plaintiff further admits that he continued to meet with Dr. Adams approximately once a month. And although plaintiff contends Dr. Adams did not conduct additional physical examinations of his spine during these meetings and accuses Dr. Adams of failing to take certain other actions during these visits, he also acknowledges that, at various times, Dr. Adams prescribed him medications for pain management, including ibuprofen, Percocet, and nerve-blocking agents, ordered and reviewed additional diagnostic tests, including an MRI, a nerve conduction study, and a colonoscopy that plaintiff refused, and eventually referred plaintiff to physical therapy.[5]

Even assuming one or more of the treatment decisions identified as problematic by Alke amounted to medical malpractice, no reasonable juror could conclude that either defendants' conduct fell below the *constitutionally* required minimum standard of care. The Eighth Amendment's prohibition on cruel and unusual punishment does not afford inmates the right to dictate the timing or manner of their medical treatment by picking out their own providers, choosing their own diagnostic techniques, selecting their own treatment modalities,

---

[5] In other words, this case is distinguishable from fact patterns like the one in Ruffin v. Deperio, 97 F. Supp. 2d 346 (W.D.N.Y. 2000), where the Court concluded summary judgment should be denied because evidence in the record demonstrated prison officials did little more than document the plaintiff-inmate's worsening medical condition.

or consulting with specialists of their choice. See, e.g., Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim.").

Nor does the Eighth Amendment entitle an inmate to a written medical history free from errors, omissions, or false statements, as even Alke himself recognizes. Pl.'s Opp'n at 15 (citing Moore v. Casselberry, 584 F. Supp. 2d 580, 581 (W.D.N.Y. 2008)). Accordingly, plaintiff's assertion that Dr. Adams falsely recorded information in plaintiff's medical file about the existence of a past narcotics addiction, especially under circumstances where such an alleged falsehood appears to be causally unrelated to any of the harm suffered in this case, is insufficient to state a constitutional violation. Bloomfield v. Wurzberger, 2009 WL 3335892, at *5 (N.D.N.Y. Oct. 15, 2009) ("The filing of a false entry in medical records, without more, does not constitute a constitutional violation."). Accordingly, defendants' motion for summary judgment will be granted.

## V. **CONCLUSION**

The Court does not doubt for one second that Alke experienced significant pain and discomfort arising from his back injury. Nor is it unsympathetic to plaintiff's frustration over receiving a degree of medical care that amounted to something less—perhaps even far less—than what he perceived as appropriate.

But the Supreme Court has repeatedly reminded lower courts that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106.

Even viewing the facts of this case in the light most favorable to him, Alke has not marshaled evidence sufficient to permit a fact finder to conclude the conduct of either defendant rose to the requisite level of indifference necessary to establish a civil rights violation of a *constitutional* magnitude.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED; and

2. Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and to close the file.

IT IS SO ORDERED.

Dated: October 24, 2018
Utica, New York.

United States District Judge